UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOLENE H. o/b/o V.E.W.,                           1:20-CV-01498-MJR
                                                   DECISION AND ORDER
                        Plaintiff,

        -v-

COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.

_____

        Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

        Plaintiff Jolene H. brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) on behalf of her child, V.E.W., seeking judicial review of the final decision of

the Commissioner of Social Security denying V.E.W. Supplemental Security Income

Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied and the

Commissioner's motion (Dkt. No. 12) is granted.

## BACKGROUND[1]

        On March 6, 2015, plaintiff Jolene H. filed an SSI application on behalf of her

child, V.E.W., alleging that V.E.W. is disabled due to tantrums, nervousness, mood

swings, memory problems, and attention-deficit hyperactivity disorder.[2] (Tr. 173-83,

---

[1] The Court assumes the parties' familiarity with V.E.W.'s medical records and educational history, which are summarized in the moving papers. The Court has reviewed the medical and school records, but cites only those portions that are relevant to the instant decision.

[2] References to "Tr," are to the administrative record in this case.

196)[3] Born on October 2, 2003, V.E.W. was sixteen years old at the time of the disability determination. (*Id.*) The application was initially denied on June 15, 2015, and plaintiff timely requested a hearing before an administrative law judge. (Tr. 67-97) On September 26, 2017, plaintiff and V.E.W. appeared with counsel before Administrative Law Judge Andrew Niedrick for a video hearing. (Tr. 10-68) On October 17, 2017, ALJ Niedrick issued a decision denying V.E.W.'s SSI claim. (*Id.*) After plaintiff's request for review was denied by the Appeals Council, she sought judicial review of the Commissioner's final determination denying benefits by this Court. (Tr. 1-6, 170-72, 649-89) On August 22, 2019, this Court issued a Decision and Order directing remand. (Tr. 690-706) The Appeals Council vacated the prior denial of benefits and remanded the case for further administrative proceedings on October 1, 2019. (*Id.*)

In accordance with the remand order, a hearing was held by telephone before Administrative Law Judge Susan Smith on April 20, 2020. (Tr. 588-637) Plaintiff and V.E.W., who were again represented by counsel, testified at the hearing. (*Id.*) On June 18, 2020, ALJ Smith issued a decision finding V.E.W. not disabled since March 6, 2015, and therefore not eligible for SSI. (*Id.*) The Appeals Council denied plaintiff's request for review on August 18, 2020. (Tr. 1-6, 158) This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. § 405(g), that is, supported by "such

---

[3]  Plaintiff previously filed applications for disability benefits on behalf of V.E.W. in 2009 and 2011, both of which were denied. (Tr. 71, 203)

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d

260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's

impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* § 416.924(d).

III.    *The ALJ's Decision*

ALJ Smith first found that V.E.W. was a school-age child on March 6, 2015, the date the application was filed, and was an adolescent at the time of the hearing and disability determination. (Tr. 592) She then followed the three-step process for evaluating V.E.W.'s SSI claim. At the first step, ALJ Smith found that V.E.W. has not engaged in substantial gainful activity since the date of her SSI application. (*Id.*) At the second step, she determined that V.E.W. has the severe impairments of attention-deficit hyperactivity disorder ("ADHD"); oppositional-defiant disorder (ODD); learning disorder; anxiety disorder; depressive disorder; and substance abuse disorder.[4] (Tr. 592) At the third step, ALJ Smith found that V.E.W. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 592-93) ALJ Smith then proceeded to consider whether V.E.W. has an impairment or combination of impairments that functionally equals the Listings, but

---

[4] The ALJ also found that V.E.W. has the non-severe impairments of asthma and hyperhidrosis, and that the record did not support a finding of autism spectrum disorder or auditory processing disorder. (Tr. 592)

concluded that V.E.W. does not because V.E.W. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 593-99) Specifically, ALJ Smith determined that V.E.W.'s mental impairments cause less than a marked limitation in acquiring and using information; attending and completing tasks; interacting and relating with others; ability to care for herself; and health and physical well-being. (Tr. 594) She also found that V.E.W. has no limitations in moving about and manipulating objects. (*Id.*) As a result, ALJ Smith determined that V.E.W. has not been disabled within the meaning of the Act since the application date. (Tr. 599)

IV.    *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred by failing to state the specific weight given to the multiple medical opinions and teacher questionnaires in the record. (*See* Dkt. No. 11-1 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

An ALJ must consider all pertinent evidence in the record regarding a claimant's impairments and should explain why she relied on certain opinions of the record and not others. *See Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000). The Social Security regulations indicate that ALJs will consider all relevant evidence in the child's case record, including evidence from medical sources, parents, and teachers. *See* 20 C.F.R. § 416.924(a). The Regulations also require ALJs to "evaluate every medical opinion [received]" from both treating and non-treating sources. *See* 20 C.F.R. § 416.927. Here, ALJ Smith followed these guidelines in rendering the disability determination.

In the prior determination denying disability benefits, ALJ Niedrick concluded, *inter alia*, that V.E.W. had less than marked limitations in the domains of acquiring and

using information and attending and completing tasks. (Tr. 22-24) In accordance with this Court's order remanding ALJ Niedrick's denial of benefits, the Appeals Council specifically instructed ALJ Smith to reconsider V.E.W.'s ability within the domains of acquiring and using information and attending and completing tasks, in light of V.E.W.'s 2017 Individualized Education Plan ("IEP"), and to resolve any conflicts in the record resulting from this evidence. (Tr. 591) ALJ Smith followed this directive. In fact, her decision contained a meaningful discussion of V.E.W.'s 2017 IEP and a thorough explanation of why the evidence in the record, considered in totality and including the 2017 IEP, was not in conflict and supported a finding that V.E.W. had less than marked limitations in the domains of acquiring and using information and attending and completing tasks. (Tr. 595-99)

Moreover, throughout her decision, ALJ Smith noted that, in addition to the specific findings she was making with respect to the 2017 IEP, she "*otherwise adopt[ed] the prior ALJ decision's findings concerning the remainder of the evidence in the record.*" (Id.) (emphasis added) Thus, the Court finds that ALJ Smith specifically incorporated in her decision, by reference, ALJ Niedrick's prior findings as to the appropriate weight to be given to the medical opinions and teacher questionnaires in the record. As explained in detail below, the Court has considered the weight given by ALJ Niedrick as to the various opinions in the record at that time as well as the additional discussion of opinion evidence by ALJ Smith and finds that ALJ Smith did not err by failing to assign specific weight to the medical opinions and teacher questionnaires.

*Medical Opinions*

Consultative examiner Gregory Fabiano, Ph.D. conducted a psychiatric evaluation of V.E.W. on May 26, 2015, at which time he found only some mild or moderate limitations and no marked limitations. (Tr. 480-84) Specifically, Dr. Fabiano concluded that V.E.W. had no limitations in her ability to respond to changes in the environment, ask questions, and request assistance in an age-appropriate manner. (*Id.*) He found that V.E.W. had only "some mild limitations" in her ability "to learn in accordance with cognitive functioning" and interact adequately with peers. (*Id.*) He opined that V.E.W. had "some moderate limitations" in her ability to follow and understand age-appropriate directions; complete age-appropriate tasks; adequately maintain appropriate social behavior; and interact adequately with adults. (*Id.*) Indeed, Dr. Fabiano concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [V.E.W.'s] ability to function on a daily basis." (*Id.*) In June of 2015, state agency physician J. Sharif-Najafi, M.D. reviewed the evidence and opined, consistent with Dr. Fabiano's findings, that V.E.W. had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitations in the remaining domains. (Tr. 74-75, 593-99)

ALJ Niedrick justifiably gave great weight to the opinions of both Dr. Fabiano and Dr. Sharif-Najafi. (Tr. 21) Specifically, ALJ Niedrick concluded that Dr. Fabiano's opinion was (1) consistent with the medical evidence as well as with the degree and type of treatment needed by V.E.W.; and (2) consistent with V.E.W.'s description of her own

activities and capabilities. (*Id.*) ALJ Niedrick also appropriately reasoned that Dr. Sharif-Najafi's opinion was "generally consistent with the medical records as a whole as well as [V.E.W.'s] activities, including playing basketball, horseback riding, playing games on her smart phone, and playing outside with neighborhood friends." (*Id.*) In addition to incorporating and adopting ALJ Niedrick's finding of great weight as to Dr. Fabiano's and Dr. Sharif-Najafi's opinions in her decision, ALJ Smith also specifically noted that Dr. Fabiano's opinion of no more than moderate limitations was consistent with other, more recent medical evidence in the record. (Tr. 596-97) Thus, the Court finds, contrary to plaintiff's arguments, that ALJ Smith did not fail to appropriately weigh the opinions of Dr. Fabiano and Dr. Sharif-Najafi. Moreover, both opinions were consistent with ALJ Smith's conclusions that plaintiff did not suffer a marked or extreme limitation in any domain, as would be necessary to support a finding of disability. *See* 20 C.F.R. § 416.926a(e)(2)(i) ("Marked" limitations are "more than moderate" but less than extreme").

Janine Ippolito, Psy.D. conducted a psychiatric and intelligence consultative evaluation of V.E.W. on December 10, 2019.[5] (Tr. 799-806) Following the examination, Dr. Ippolito opined that V.E.W. was able to "learn in accordance with cognitive functioning"; ask questions and request assistance in an age-appropriate manner; and interact adequately with peers and adults with no evidence of limitation. (Tr. 801) Dr. Ippolito found that V.E.W. could attend to, follow and understand age-appropriate directions and sustain concentration and complete age-appropriate tasks with only mild limitations. (*Id.*) Dr. Ippolito also concluded that V.E.W. could adequately maintain

---

[5] Dr. Ippolito issued her opinion in December of 2019, after ALJ's Niedrick rendered his decision in October of 2017. Thus, Dr. Ippolito's opinion was not referenced or discussed by ALJ Niedrick in his prior denial of benefits.

appropriate social behavior and respond appropriately to changes in the environment with only moderate limitations. (*Id.*) Consistent with Dr. Fabiano's and Dr. Sharif-Najafi's opinions, Dr. Ippolito determined that V.E.W. did not have any marked or extreme limitations. (Tr. 483, 801) Also like Dr. Fabiano, Dr. Ippolito specifically noted that "[t]he results of the present evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [V.E.W.'s] ability to function on a daily basis." (*Id.*)

While ALJ Smith did not specifically state that she gave great or significant weight to Dr. Ippolito's opinion, it is clear from her decision that ALJ Smith relied heavily on Dr. Ippolito's findings in rendering a determination that V.E.W. did not have the extreme limitations in one domain or the marked limitations in at least two domains that would be required to find that V.E.W.'s impairments functionally equaled the Listings. (Tr. 597) For example, ALJ Smith quoted at length from Dr. Ippolito's assessment of no more than mild or moderate limitations and specifically noted that Dr. Ippolito concluded that V.E.W.'s psychiatric symptoms were not significant enough to interfere with V.E.W.'s functioning on a daily basis. (Tr.) ALJ Smith also astutely observed that the moderate limitations assessed by Dr. Ippolito were largely unrelated to the domains which ALJ Smith had been specifically instructed to consider, by the remand order, namely acquiring and using information and attending and completing tasks. (*Id.*) Finally, Dr. Ippolito's opinion is entirely consistent with the other medical opinion evidence in the record and ALJ Smith's conclusion that V.E.W. suffered no more than mild or moderate limitations, at most, in any domain. Thus, remand to reconsider Dr. Ippolito's opinion and assign a specific weight would be wholly unnecessary since it

would not affect the outcome of the disability determination. *See Williams v. Colvin*, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) (no remand necessary where the ALJ's detailed discussion of a consultative examiner's opinion and further reliance on the opinion in rending the disability determination suggested that a specific assignment of weight would not have impacted the outcome of the ALJ's decision); *Jones v. Barnhart*, 02 Civ. 0792, 2003 WL 941722, *10 (S.D.N.Y. Mar. 7, 2013) (finding harmless error in the ALJ's failure to grant weight to the claimant's treating physician because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them.")[6]

*Teacher Questionnaires*

Evidence from teachers "cannot establish the existence of a medically determinable impairment," but their opinions may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *See* Social Security Ruling 06-03p, 2006 SSR LEXIS 5 at *4, 2006 WL 2329939, *2 (2006). To that end, the opinion of an individual, like a teacher, who works with a child daily, is an invaluable resource in determining the severity of an impairment and must be considered carefully. *See Mohammed v. Astrue*, 13-CV-6525, 2010 WL 2640541 *4 (W.D.N.Y. 2010) Contrary to plaintiff's contentions, ALJ Smith did carefully consider and weigh the opinions of V.E.W.'s teachers in rendering her determination that V.E.W. was not disabled under the Act.

On April 28, 2015, teachers Ms. VanDenBosch and Ms. Linderman completed a questionnaire as to V.E.W.'s functioning. (Tr. 221-32) In her decision, ALJ Smith

---

[6] The Court notes that Dr. Ippolito's opinion was rendered after V.E.W.'s admission to the psychiatric department of Eastern Niagara Hospital for three days in February 2019 and her March 2019 emergency room visits for anxiety, depression and panic attacks. Thus, plaintiff's argument that the ALJ erred by relaying on stale medical evidence that did not take into account these events is without merit.

acknowledged that VanDenBosch and Linderman identified one "serious problem" and a number of "obvious problems" in V.E.W.'s ability to acquire and use information and attend and complete tasks, but that the teachers also observed that, at least to some degree, V.E.W.'s poor achievement appeared to be by choice. (Tr. 222-43, 598) Specifically, VanDenBasch and Linderman commented that V.E.W. "won't even try or attempt (certain school work) on her own" and that such problems appear "to be more of a choice and not always a lack of ability." (*Id.*) ALJ Smith went on to conclude that even taking into account the problems identified by Linderman and VanDenBasch in the 2015 Teacher Questionnaire, the record still did not support a finding that V.E.W. had marked limitations in either acquiring and using information or attending and completing tasks, since the 2015 Teacher Questionnaire noted only one "serious" problem within all of the subcategories in both domains, and Dr. Fabiano's consultative report from that same year identified that V.E.W. had, at most, some moderate mental limitations. (Tr. 598) Indeed, ALJ Smith's conclusion that a teacher questionnaire identifying only one "serious" problem and a number of "obvious" problems does not show a marked limitation is consistent with case law analyzing similar educational records. *See Nicole A. o/b/o J.D.J.W. v. Comm'r of Soc. Sec.*, 16-CV-1654, 2021 WL 916016, at *4 (W.D.N.Y. Mar. 10, 2021) (a teacher questionnaire supported finding "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and caring for oneself despite some "serious" and "very serious" problems in certain activities); *Abukhader v. Comm'r of Soc. Sec.*, 11 Civ. 9453, 2013 U.S. Dist. LEXIS 155771 (S.D.N.Y. Oct. 28, 2013 2013) (ALJ's determination of "less than marked limitation" in domain of acquiring and using information was based upon substantial

evidence where teacher questionnaire indicated that plaintiff had problems ranging from "slight" to "very serious" in the activities associated with the domain); *White o/b/o T.R.W. v. Berryhill*, 17-CV-636, 2019 U.S. Dist. LEXIS 50673 (W.D.N.Y. Mar. 26, 2019) (finding that teacher questionnaire assessing claimant with "slight" to "very serious" problems in certain domains was not "necessarily inconsistent with the ALJ's conclusion that [claimant's] limitations were 'less than marked'") (collecting cases). Thus, plaintiff's contention that ALJ Smith did not consider the opinions in the 2015 Teacher Questionnaire is without merit.[7]

In addition to considering the 2015 Teacher Questionnaire, the ALJ further relied on the more recent questionnaire completed by special education teacher Ms. Edmister on March 20, 2020. (Tr. 598, 756-63) Indeed, the ALJ specifically assigned Edmister's 2020 opinion "greater weight" than the opinions expressed by VanDenBosch and Linderman in 2015 because Edmister's opinion was more consistent with the record as a whole, including Dr. Ippolito's 2019 consultative examination. (Tr. 598) Thus, plaintiff's contention that the ALJ failed to assign weight to the 2020 Teacher Questionnaire is without merit. *See Leon o/b/o J.E.V. v. Comm'r of Soc. Sec.*, 1:19-CV-0491, 2020 WL 6699521, at *4 (W.D.N.Y. Nov. 13, 2020) (where the ALJ considered the teacher questionnaire in his decision and specifically relied on her opinions in making his determination in the domain of attending and completing tasks, there was no merit to

---

[7] Even if the Court were to conclude that ALJ Smith erred by failing to assign a specific weight to the 2015 Teacher Questionnaire, which it does not, any such failure would be harmless error since, for all the reasons stated *infra*, the opinions in the 2015 Teacher Questionnaire supported a finding that plaintiff did not have a marked or extreme limitation in any domain. *See Thompson v. Berryhill*, 17-CV-901, 2019 WL 590680, at *3 (W.D.N.Y. Feb. 12, 2019) (remand unnecessary in part because even if the ALJ gave substantial weight to a teacher questionnaire, it would not have compelled a finding that the claimant was disabled); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1981) ("The ALJ was not required to mention or discuss every single piece of evidence in the record" and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

plaintiff's contention that the ALJ did not provide "any indication of how much weight was actually given to the opinion" and remand was unnecessary).

Moreover, the 2020 Teacher Questionnaire, which assigned no serious or greater problems to V.E.W. in any domain, is consistent with the ALJ's ultimate conclusion that V.E.W. did not have the extreme limitation in at least one domain or the marked limitations in at least two domains that are required for a finding of disability. (Tr. 597-99, 757-62) In fact, the 2020 Teacher Questionnaire reflected that V.E.W. showed improvement in her schoolwork over time. Indeed, Edmister concluded, in 2020, that V.E.W. had no problem "comprehending or doing math problems", while VanDenBosch and Linderman found, in 2015, that V.E.W. had a serious problem in this area. (Tr. 222, 598, 757) Likewise, Edmister concluded that V.E.W. only had a few "obvious" problems in the domains of acquiring and using information and attending and completing tasks and no "serious" or "very serious" problems in any domain. (Tr. 597-98, 575-62) In contrast, VanDenBosch and Linderman found V.E.W. to have one serious problem and numerous obvious problems in those same domains. In sum, it is clear from the record that ALJ Smith assigned greater weight to the more recent 2020 Teacher Questionnaire than the prior 2015 Teacher Questionnaire and that Edmister's 2020 opinion was consistent with the medical and other evidence in the record.

An ALJ "must set forth the essential considerations upon which the decision was based with sufficient specificity so as to enable the reviewing court to determine whether the disability determination was supported by substantial evidence." *Frye ex. rel. A.O. v. Comm'r of Soc. Sec.*, 5:10-CV-98, 2010 U.S. Dist. LEXIS 142409, (N.D.N.Y. Nov. 12, 2010). Moreover, it is not required that the ALJ's findings "perfectly

correspond" with the opinion evidence, *see Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013), nor that the ALJ "explicitly analyze every piece of conflicting evidence in the record," *Christina B. v. Comm'r of Soc.* Sec., 5:19-CV-1192, 2020 U.S. Dist. LEXIS 182211 (N.D.N.Y. Oct. 1, 2020). Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why [she] considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, ALJ Smith considered the relevant record evidence, including the medical opinion evidence, the teacher questionnaires, and V.E.W.'s representations as to her own abilities. Moreover, the Court is well-able to glean the rationale of ALJ Smith's decision and finds that her conclusions were supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**


Dated:      March 25, 2022
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

15